# Exh A

KATZ & DOUGHERTY, LLC
George T. Dougherty, Esquire
NJ ID #247791969
4020 Quakerbridge Road
Mercerville, New Jersey 08619
609-587-1199 Phone
Attorneys for Plaintiffs

---

| | |
|---|---|
| AMIN ARIAS individually and as President of CHIKARA TOMI, Inc. and Principal Member of Plaintiff NUEVO CAMINO, LLC | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION-MERCER COUNTY<br>:<br>: DOCKET NO.: MER-L- |
| Plaintiffs, | : |
| | : Civil Action |
| v. | : |
| The CITY OF TRENTON, a Municipal Corporation of the City of Trenton, SHEILAH COLEY, individually and as former Police Director of the City of Trenton, TIMOTHY LONG, a police officer of the City of Trenton; JOHN DOE, JANE DOE and ABC Co. | :<br>: VERIFIED<br>: COMPLAINT AND JURY DEMAND<br>:<br>:<br>: |
| Defendants. | : |

---

Plaintiffs Amin Arias, Chikara Tomi, Inc. and Nuevo Camino, LLC, by way of Complaint against the defendants say:

The Parties:

1. At all times pertinent to this matter:

   a. Plaintiff Nuevo Camino, LLC, was and is a New Jersey limited liability company which owned a building at 105 East Hanover Street, Trenton, New Jersey;

1

b. Plaintiff Chikara Tomi, Inc., is a New Jersey Corporation which owns and operates a New Jersey Licensed Alcohol Beverage retail establishment doing business as "Tony Liquor" on the ground floor of 105 East Hanover Street, Trenton, New Jersey;

c. Plaintiff Amin Arias was and is a resident of the Township of Hamilton and was and is the sole member of Nuevo Camino, LLC and was and is the president and sole stockholder of plaintiff Chikara Tomi, Inc.

d. In addition to the Tony Liquor business, plaintiff Arias leases through Nuevo Camino, LLC four residential dwelling units in 105 East Hanover Street to individual tenants;

e. The defendant City of Trenton was and is a municipal corporation of the State of New Jersey operating organized and operating as a Faulkner Act Mayor-Council government; and

f. The defendant Sheilah Coley was the Director of the City of Trenton Police Department, and a member of the Mayor's Cabinet of Department Directors pursuant to N.J.S.A. 40A:14-118 et seq. until she was dismissed on June 9, 2021.

g. The defendant Timothy Long was and is a sworn police officer of the City of Trenton.

h. The defendants John Doe, Jane Doe and ABC Co. are fictitious names designating one or more individuals who or entities which may be identified through pre-trial discovery by name

2

and role as having liability, in whole or in part, for plaintiffs' losses as complained of herein.

## Allegations Applicable to All Counts

2. At all times pertinent to this matter, plaintiff Amin Arias operated Tony Liquor and rented his East Hanover Street apartments in the downtown business area of Trenton with an awareness of the importance of dedicated City Police and Fire personnel to the success of his business and to the safety of his tenants and his customers.

3. During the first two years of his operation, with certain exceptions hereafter noted, plaintiff received reasonably prompt and effective responses from the City's Police Department upper management and street officers to his reports of observed suspicious activity around his location.

4. He also enjoyed the support of the Trenton business community and the City's Administrative officials including the Mayor and his Department directors.

5. On April 22, 2019, the local newspapers reported the appointment of a new Civilian Police Director, defendant Sheilah Coley, to be the administrative head of the Trenton force.

6. Plaintiff reacted favorably to the announcement of her appointment, hopeful that newly-appointed Police Director would maintain, *if not increase*, the level of public safety attention

3

to his neighborhood which was vital to the City's retail business owners and residents

7.  An exception to plaintiff's satisfaction with police responses to his concerns for neighborhood safety occurred just prior to the Mayor's announcement of Director Coley's appointment.

8. As reported to the police, on March 28, 2019 an individual who was in the process of purchasing a beer refused to show his ID to plaintiff, responding to the request by exposing a handgun tucked into his waistband, saying "*this is my ID*".

9.  While plaintiff dialed the Trenton Police Department, the customer fled the store behind his accomplice.

10.   Plaintiff followed his phone call report with a personal appearance at the Police Department, describing the incident and viewing police photos of possible suspects.

11.   Plaintiff also made available to the police images of the incident captured on his store's security cameras.

12.   In viewing the police department's photo galleries of potential suspects plaintiff found no photos matching the handgun carrier; however he identified a photo of the carrier's accomplice and requested that the police consider him to be a good source of the identity of the handgun carrying customer.

4

**Director Coley's Visit to Tony Liquor**

13.    Shortly after her appointment was announced, defendant Coley was introduced by the Mayor's Business Administrator, Adam Cruz, to plaintiff Arias at his store.

14.    When Director Coley asked plaintiff what public safety concerns he had regarding his store's location, plaintiff told her of his "ID/handgun" episode, and his disappointment with the police officers' apparent lack of interest in utilizing his security camera photos of the "handgun" customer or his accomplice.

15.    Plaintiff showed Director Coley his cell phone images (copied on his phone from his security camera screen) and explained that they had been shown to Detective Nazario to identify the handgun flasher through the positive identification of his accomplice.

16.    Plaintiff explained that the police, either failed to follow up, or failed to notify him of their efforts.

17.    In reaction to the plaintiff's report of the Department's lack of follow-through, Director Coley said she would *look into the matter.*

18.    As set forth herein, despite her comforting words, Director Coley, like the officers complained of, never furnished any additional information on the processing of plaintiff's handgun incident report.

5

**Tony Liquor's Proximity to State Capital Complex**

19.     Plaintiffs' building at 105 East Hanover Street is very
close to the State Capital Complex which includes the Governor's
Office and the Legislative Chambers of the State Senate and the
Assembly.

20.     Because the Capital Complex is a natural staging area for
public gatherings, a large gathering will often spill out into
the surrounding side streets such as East Hanover Street when
nationally publicized events arouse attention resulting in large
crowds coming into the area for demonstrations and related
gatherings.

21.     On May 26, 2020, widespread news reports of the death of
George Floyd while in Minneapolis police custody generated angry
protests in many cities throughout America.

22.     Reports of protests throughout the nation included reports
of destruction of property by fire, looting and other forms of
vandalism beginning on May 26, the day of Floyd's death, and
continuing thereafter through May 31, 2020.

**Plaintiff's Role as a Trenton Business Community Leader**

23.     In addition to operating his businesses, plaintiff Arias
was and is actively engaged in numerous civic activities
individually and through his company, serving, since 2018, as

Vice President of the Latino Merchants' Association of New Jersey.

24.    Monitoring the spread of George Floyd protests, plaintiff maintained close contact with his Latino Merchants members and with their President, anticipating similar protests in New Jersey's State Capital.

25.    They were alerted by television and social media postings, that George Floyd protests were being planned for the New Jersey Governor's office in the Capital State House on State Street in the City of Trenton

26.    Plaintiff knew from his frequent communications with Trenton Mayor Gusciora that the mayor was mindful of the concern of his Merchants' Association members that the City be prepared to protect its merchants and residents against injury and property damage.

**Protests Begin in Trenton**

27.    On Saturday, May 30, 2020:

   a. Protesters appeared in various locations including the State House and the City Police Headquarters forming street parades shouting "*I can't breathe*" (echoing George Floyd's publicized plea to the police) and calling for "*Police Reform*" along the route;

7

b. Mayor Gusciora appeared on the steps of the State House expressing his solidarity with them;

c. During the early evening, the City's Police officers deployed to monitor crowd behavior were mostly well-respected by the protesters; and

d. By day's end on Saturday, the crowds dispersed without violence or damage to plaintiffs' store.

28. Although the Trenton protesters dispersed by late evening on Saturday without notable incident, media coverage of the Philadelphia Floyd protests reported that those protests had turned violent on Saturday with at least nine fires were set and businesses in Center City Philadelphia were looted.

29. After the Trenton protesters dispersed on Saturday, plaintiff learned from the same media sources that a *second round* of Trenton protests was being prepared for Sunday, May 31, 2020.

30. Following Saturday's relatively non-violent protest in Trenton, plaintiff Arias and members of the Merchants' Association shared with Mayor Gusciora that evening their concerns about Trenton being subject on Sunday to the arson and looting which was occurring at the close of Philadelphia's Saturday protest.

31. Plaintiff Arias and his fellow merchants requested and received the Mayor's assurance that the City's Police Department

8

was alert to the need to protect the merchants against such
damage.

## Police Readiness on Display

32.  By early evening Sunday, May 31, plaintiff observed that
the streets of Trenton's downtown business zone were lined with
police vehicles, not solely from the City of Trenton, but from
the State Police and the Mercer County Sheriff's Office.

33.  Starting at approximately 6:30 PM on Sunday, the protest
crowd which had formed in the area of the State House stayed
reasonably peaceful; however, by 8:00 PM, it had grown violent.

34.  Among the first of the violent incidents on May 31, 2020,
was a fire set by protesters to a police vehicle parked on North
Broad Street, a short walk from the Capital steps and from
plaintiff's Liquor store at 105 E. Hanover Street.

## Dir. Coley's Inattention to Tony Liquors

35.  From the time of her first appearance at his store with
Business Administrator Adam Cruz, plaintiff did his best to earn
her support for the Police Director's attention to business
owners' concerns such as following through on questioning the
accomplice of the customer who displayed his handgun instead of
his ID as reported to here on the first visit.

36.  Following that first visit, he met the Director once more
during a meeting of City Hall managerial employees and members

9

of the Latino Merchants' Association which was convened to improve communications between the Merchants and the City's upper management to improve problem-solving.

37.    When the Merchants' meeting concluded, plaintiff approached Director Coley hoping to Learn the results of her "looking into" the Police Department's investigation of his customer's use of a handgun in lieu of an ID to buy a beer.

38.    Having no reason to think that the Director had misled him about "following up", plaintiff was surprised and disappointed when she responded: "*I already told you*", knowing that they had not spoken at all since that first meeting and knowing that she had not told him anything.

39.    Subsequently, plaintiff received a visit by City Councilman Joseph Harrison at his store, during which time the Councilman became engaged in a cell phone conversation with the Mayor's Chief of Staff, Yoshi Manale at City Hall.

40.    The call concerned a meeting which the Mayor had scheduled for the following week between members of the Latino community and Director Coley with a focus on maintaining more effective communications between City officials and the business community.

41.    Being aware of the meeting, plaintiff expressed his disappointment to the Councilman that, as an officer of the N.J.

10

Latino Merchants' Association, he had not been invited to attend.

42.    During his cell phone call with Chief of Staff Manale, Councilman Harrison asked why plaintiff Arias was not invited to attend the meeting, to which the Chief of Staff responded: "*Coley doesn't like Tony*".

43.    At that point, putting his cell phone on speaker mode, the Councilman asked the Chief of Staff to repeat his answer, which he did, repeating "*Coley doesn't like Tony*", explaining that it was '*because she thinks that he should be investigated for things that he is doing wrong*' (without identifying anything in particular).

44.    At no time has the City of Trenton or other law enforcement agency accused plaintiff of any wrongdoing.

**Overt Display of Disrespect**

45.    Despite the Mayor's efforts through his senior staff to promote communications between his Department Directors and community leaders, following the first such meeting when Director Coley falsely claim that she "told" plaintiff about her follow-up with the investigators of his handgun incident, Defendant Coley refused all future requests by plaintiff to meet with him on civic issues.

11

46.    Considering Director Coley's refusal to schedule meetings
       with him to be an unjustified interference with his ability to
       improve relations between his organization and the City
       leadership, on February 6, 2020 plaintiff Arias appeared at a
       public meeting of the Trenton City Council, for which he had
       registered his request to address the Council, with the
       intention of reporting to the Council Director Coley's refusal
       to meet with him on public issues.

47.    As a Department Director, defendant Coley was expected to
       attend the public meetings of City Council, however, upon seeing
       plaintiff preparing to address the City Council she abruptly
       rose up and left the Chambers.

48.    Although defendant Coley never confronted plaintiff with
       any accusation of wrongdoing, dishonesty or other justification
       for selectively barring him from communicating with her on
       matters of community interest, her open display of hostility on
       February 6, 2020, being totally uncalled for and unjustified,
       delivered a message to the effect that she held him in contempt
       as a personal matter.

**New Jersey Law Limiting Scope of Authority of Civilian Police Directors**

49.    State law permits New Jersey municipalities to adopt
       ordinances assigning responsibility for the *administration* of
       police departments to Civilian Police Directors.

12

50.     As established by the New Jersey courts, Civilian Police Directors are not sworn police officers and are therefore not empowered to exercise the powers and authority of sworn police officers.

51.     Civilian Police Directors' authority is limited to the administration of all police department personnel employment matters including enforcement of the police Disciplinary Rules and Regulations. <u>Jordan v. Harvey</u>, 381 N.J. Super. 112, 118 (App. Div. 2005)

52.     As interpreted by the <u>Jordan</u> Court, a civilian police director's function, being administrative in nature, does not include *exercising the authority and power assigned to sworn police officers*. (Id)

53.     Police Directors are not permitted to wear the badge or uniform of a police officer, to carry a firearm, to direct police actions in the field, to make arrests, or to have a two-way police radio in his/her vehicle. (Id.)

**Defendant Coley's Hands-on Management of Police Deployment**

54.     At approximately 7:30 PM, Trenton Police Director Coley was actively and visibly engaged in deploying and monitoring of police activity in the Downtown Capital District center of Trenton wearing an outfit which simulated a police officer's (Exhibit A)

13

55.   During that time period Trenton police protection for
      Trenton's Downtown District was being supplemented by police
      officers from Morrisville and other surrounding Townships for
      the day.

56.   As attested to by numerous Trenton merchants to whose
      businesses Police were dispatched (Exhibit B) the police
      presence proved to be effective in deterring threatened
      vandalism.

57.   At 8:46 PM, plaintiff Arias was at home in Hamilton
      Township home when his resident employee called to inform him
      that a crowd of citizens was preparing to break into his store,
      using large masonry blocks to penetrate the store's doors and
      windows.

58.   Plaintiff promptly called the City's Radio Room dispatchers
      relaying the report of citizens was breaking into his Liquor
      store hurling large masonry blocks to bash in the glass doors.

59.   Moments later, plaintiff called the Dispatchers again to
      report smoke rising up from the first floor of the store to the
      upper floor apartments.

60.   Plaintiff learned subsequently that the smoke was generated
      by burning paper mostly contained within the metallic office
      furniture within the store's office space of the Liquor store
      which emitted smoke throughout the building.

14

**Police Intervention Canceled by Defendant Coley**

61.    In response to plaintiff's 8:46 p.m. 911 emergency call
reporting the impending break-in, potential looting and a
possible fire, nine police officers who had been stationed at
Police Headquarters awaiting assignments, were timely dispatched
by the Public Safety Telecommunicators ("Dispatchers") to
plaintiff's building.

62.    However, on their way to plaintiff's building the
dispatched officers were counter-ordered by defendant Police
Director Coley who, exceeding her limited powers as a civilian
administrator, usurped the authority of the City's ranking
Police Officer and assumed command of over the officers
responding to plaintiffs' business.

63.    Using the Police radio, without authorization, Director
Coley ordered the dispatched police officers not to carry out
the Public Safety Dispatchers' detail to respond to the report
of the impending break and entry into plaintiff's store and a
potential threat of arson.

64.    Her unauthorized interference with the officers' assignment
took the form of chastising them for responding to the dispatch,
opining that they lacked training in fire suppression and lacked
an "exit strategy" to plan their means of stopping the looting
in progress and dealing with the occupied apartments above the
store.

15

65.    Recordings of defendant Coley countermanding the dispatch
of police protection to plaintiffs' store were made by several
onlookers, clearly capturing her counter-command that they were
to return to a staging area rather than to respond to a
competing emergent need for police protection. (Exhibit C)

66.    Although, as documented in Exhibit C, Trenton Police
responded to many threats of vandalism to other Trenton
businesses by protesters, there is no record of them being
ordered by any Police Supervisor or by Director Coley to stand
down or disregard their dispatch assignments on May 31, 2020,
due to lack of training or experience in preventing such
vandalism or for any other reason.

**Failure to Investigate Plaintiff's Readily Available Evidence**

67.    As recorded on the Tony Liquor security cameras as well as
various citizens' video devices which were circulated through
the greater Trenton area via social media, the vandals who broke
into the store used large concrete blocks to smash through the
exterior windows and doors of plaintiffs' building.

68.    Uninterrupted and undeterred by the canceled police, the
vandals stripped plaintiff's store of almost its entire
inventory of beverages. (Exhibit D)

69.    The cameras also recorded the looters smashing open the
plaintiffs' lottery ticket dispenser removing all of the

16

scratch-off tickets, prepaid by the plaintiff, each of which was capable of yielding cash prizes from $1.00 to $3 Million to the looters. (Id)

70.     It was widely known that the security cameras in place at plaintiff's store were functioning during the looting and that they were positioned to photograph the intruders.

**Defendants' Continuing Indifference to the Tony Liquor Looting**

71.     Not only did Director Coley unlawfully bar the dispatched officers from reaching the store during the looting process, neither she nor any police officer under her administrative direction, appeared at the Tony Liquor crime scene - until *June 23, 2020* - to inquire about the extent of damage to his property and/or to gather information such as fingerprints and photographs from which to identify and capture any of the 33 looters.

72.     On June 1, 2020, the day after the looting, plaintiff Arias complained to Mayor Gusciora about the lack of initiative by the police to interview him as the victim of the looting or to search for fingerprints from the many surfaces which the looters had to have touched.

73.     On July 7, 2020, a Notice of Tort Claim was filed by plaintiff with the City of Trenton pursuant to N.J.S.A. 59:8-1 et seq. reserving the right to file a Civil Action for damages

17

arising from the City's palpably unreasonable cancellation of
the Police Department's dispatch of available police officers
who were on their way to plaintiff's Liquor store and for the
City Police Director's unlawful exercise of police powers.

74. It was not until June 23, 2020, three weeks after the
looting of plaintiffs' store, that Trenton Police Captain Mark
Kiefer, accompanied by Police Officer Angel Turner and Det. Sgt.
Christopher Kurfuss, first appeared on the sidewalk in front of
plaintiff's store to speak with plaintiff Arias.

75. As captured on the body camera of Captain Kiefer, in
response to his explanation that he and the other officers came
to obtain information from plaintiff about the May 31 looting of
his store.

76. The captain's body camera accurately recorded plaintiff
Arias declining to be interviewed 23 days after he had
complained of absence of any Police Department Interest in
investigating is looting and related damage on June 1, 2020.

77. Notably, in hindsight, neither Det. Sgt. Kurfuss nor
Officer Turner claimed that he had been interviewed on June 1,
2020 by defendant Timothy Long.

**Fabrication of Evidence to Conceal Dir. Coley's Neglect**

78. On July 9, 2021, with the approval of City Council,
defendant Coley was terminated as Police Director by the

18

Mayor and was replaced by Acting Police Director Steven Wilson.

79. During his first week in office, (then[1]) Acting Police Director Wilson examined the absence of any police investigative reports relating to the looting of Tony's Liquor. (Exhibit E, 7/9/21 Times News Article).

80. Although there had been no police interview of plaintiff's store's looting from the night of the looting on May 31, 2020, through June 3, 2020, plaintiff received a call from Police Officer Angel Turner on June 3, 2020, asking if she could obtain photographs of the looters from the store's security cameras.

81. When asked if the Police intended to interview the plaintiff as to his knowledge of the looting and his losses, Officer Turner said no, "*it was not necessary*," plaintiff realized that the Police Department was not committed to finding and arresting the perpetrators and therefore declined to supply the security camera photos.

82. The next time the Police Department sought any information about the Liquor store break-in and looting, Captain Kiefer scheduled an 11:00 AM meeting with plaintiff for June 23, 2020 at the Store joined by Officer Angel Turner and

---

[1] Appointed Police Director on December 2, 2021.

19

Detective Sgt. Kurfuss, in a brief meeting which was recorded on his body camera.

83. In response to Captain Kiefer's explanation that he and Officer Turner wanted information about the looting and damages, as recorded on the body camera, plaintiff remarked that the Police Department had shown no interest in gathering the same information 22 days earlier, and therefore plaintiff did not see the need to give the information to the police at that time.

84. As recorded, Capt. Kiefer cut plaintiff short, stating "no-no-no-no-no" you're not going to start with that" insisting that he had an 11:00 meeting and *we know you were not happy with the service... and that's why we're here."*

85. During that recorded meeting, none of the officers challenged plaintiff's statement that the information that Captain Kiefer was requesting from him should have been requested 22 days earlier (June 1, 2020) rather than on June 23.

86. Had there been a police presence on at his business on June 1, seeking information about plaintiff's losses and his experiences with the looters from plaintiff *at least one of the officers* present on June 23 would have spoken up.

**Fabricated June 1, 2020, Interview by TPD Officer Timothy Long**

87. Shortly before the July 9, 2021, publication of defendant
Coley being replaced by Acting Director, Steven Wilson,
plaintiff received a business card from Detective Sgt.
Kurfuss requesting a July 13 meeting. (Exhibit F)

88. At the meeting, Sgt. Kurfuss asked plaintiff for his
*inventory of the damages* he suffered from the May 31, 2020
looting.

89. When plaintiff asked why he wanted an inventory of the
looting damage, Sgt. Kurfuss explained he was following up on
plaintiff's June 1, 2020 interview with police officer Timothy
Long seeking plaintiff's account of the May 31, 2020 looting
of his store.

90. When plaintiff denied knowledge of such an interview,
Detective Kurfuss presented him with a document entitled
"Incident Report" (attached as Exhibit G).

91. In the Incident Report, Trenton Police Officer Timothy Long
(Badge 5546), states that he was detailed at 12:12 p.m. on
June 1, 2020 to plaintiff's store at 105 E Hanover Street.

**Fabricated Evidence**

92. Apart from clearly erroneous physical descriptions of the
plaintiff, the report contains a single page report of Officer
Long's "interview" with plaintiff.

21

93. Plaintiff absolutely denies being interviewed by Officer Long on June 1, 2020 or at any other time.

94. He also asserts that on June 1, 2020, from 11:00 a.m. through 5:00 p.m., he was thoroughly occupied with his Latino Merchants' colleagues:

  a. Preparing for a 12:00 noon press conference in front of his store on East Hanover Street;

  b. Hosting the press conference attended by at least five representatives of the area media until 1:00 p.m.;

  c. Proceeding directly to a meeting with the Mayor on the Steps of City Hall from 2:00 p.m. until 3:00 p.m.; and

  d. Retiring to the Mayor's officer for conferencing relating to the public safety issues of the day.

95. The "Report" appears to have been fabricated to fill the void in the TPD's record of active investigation into the looting of Tony Liquor, by creating a paper record of an investigation into a serious incident which *should have been initiated*, but which did not occur during defendant Director Coley's tenure.

96. Evidence of the fabrication of the report includes:

a. The Report's description of plaintiff as being 5'7" and 170 lbs., whereas plaintiff is actually 5'2" and weighs 285 lbs.; and

b. Plaintiff's "employer" is listed as being "Tony's Bar 7 Liquor at 629 Whittaker Avenue", although plaintiff was never "employed" there, but was the owner of that business *until about a year prior to the alleged interview.*

97. Significant circumstantial evidence that this official police report was fabricated includes:

a. On June 1, 2020, from 11:00 AM through 1:00PM, plaintiff was fully occupied preparing for and conducting a store-front press conference attended by news media regarding his looting incident and the absence of police protection resulting in extensive looting and damage to Tony Liquor;

b. There were no police officers visible during the preparation or the conducting of the press conference, following which the entire assembly walked from 105 East Hanover Street to 319 East State Street (City Hall) where they reassembled on the steps of City Hall and greeted by Mayor Gusciora;

23

       c. The Mayor's session was devoid of any appearance by police officers attempting to interview plaintiff about anything;

       d. After about one hour, the Mayor invited plaintiff and some of his associates to continue discussing the looting and related issues within City Hall; and,

       e. Once more, during the indoor City Hall meeting, no police officers engaged in any form of interviewing nor was there room on the agenda for such activity.

98.  The City's response to plaintiff's OPRA requests for Officer Long's June 1, 2020 police assignment records (Exhibit H), fails to record Officer Long being dispatched to 105 East Hanover Street on June 1, 2020 at anywhere near 12 Noon.

99.  Exhibit F, an OPRA response to plaintiffs' request for documentation of Officer Long's June 1, 2020 dispatch assignments, appears to be photo-fabricated to *simulate* an official dispatch record for Officer Long, but was done carelessly, superimposing data in inappropriate places on the form.

100. The City's response to plaintiff's OPRA request for the audio and video images recorded on Officer Long's body camera on June 1, 2020 declared that Officer Long's body camera was not in use on June 1, 2020. (Exhibit H)

24

**Plaintiff's June 3 Report to the Mayor**

101. Having complained directly to Mayor Gusciora about Director Coley's May 31 order stopping the police officers from responding to his store at the beginning of the break-in and looting, plaintiff reported to the Mayor on June 3, 2020, that he had still not received any inquiry from the Police Department seeking an interview him about his May 31 looting.

102. Had Officer Timothy Long's Investigative Report of June 1, 2020, been truthful and not fabricated to make it appear that plaintiff's looting had been timely addressed:

      a. Captain Kiefer or someone else present at the June 23 sidewalk meeting would have spoken out against plaintiff's claim that no one interviewed him from June 1 to June 23, citing Officer Timothy Long's June 1, 2020 "Incident Report" which would certainly have been on file at headquarters by June 23;

      b. Being eager to take all legal action to recover his losses, plaintiff would not have withheld any information from the investigating officer;

      c. He would have had no reason to report to Mayor Gusciora on June 3 that the police had not yet attempted to interview him about his extensive looting and related losses; and

25

          d. Having publicly complained about the Police

Director intervening on May 31 with the dispatch of

police officers to respond to reports of looting at

plaintiff's building, and the absence of any post-

looting interviews from June 1, to June 23, 2020,

had plaintiff actually been interviewed by

defendant Long on June 1, or any other time before

June 23, he would have eagerly provided as much

information as he had without delay.

103. Fourteen months later, the Trenton Times newspaper
published a summary of the May 31, 2020 vandalism, reporting
that

> "...Trenton police never mounted any serious
> investigation into the damage to dozens of stores,
> including hard-hit Tony Liquor East Hanover
> Street." (Exhibit E)

104. Having filed a Notice of Tort Claim on July 7, 2020
accusing the City of Trenton and Police Director Coley of
canceling available police protection which had been
dispatched to his store and having reported to Mayor Gusciora
the failure of the Police Department to respond to his offers
to supply security camera photographs of 33 looters to assist
in the arrest of the vandals,  plaintiff has reason to believe
and therefore alleges, subject to pre-trial discovery, that

26

Officer Long's June 1, 2020 interview and "Incident Report",
shown to him for the first time on July 13, 2021, was
unlawfully fabricated with the intention of being submitted
into evidence as an official record to fend off the
anticipated civil action asserting a denial of equal
protection.

## CAUSES OF ACTION

### COUNT I

**DEPRIVATION UNDER COLOR OF LAW OF PLAINTIFF'S
CIVIL RIGHTS TO EQUAL POLICE AND FIRE
PROTECTION - 18 USCA 1983**

(All Defendants)

105. All allegations set forth above are incorporated herein by
reference as though set forth in full.

106. *18 U.S.C.A. 1983* provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or
> other proper proceeding for redress...,

27

107. *18 U.S.C.A. 1983* was violated on May 31, 2020 by the defendant City of Trenton acting through Police Director Coley, when, on hearing that police officers had been dispatched by the Trenton Police Public Safety Telecommunicators to plaintiff's Liquor store and residential apartments, defendant Coley usurped the powers of the senior sworn Trenton Police Officers, taking it upon herself to cancel their dispatch to plaintiff's business then under attack.

108. Director Coley did so by unlawfully communicating orders to the responding police over the Police Departments Radio, chastising them for not being having an "exit strategy" and for not being competent to deal with the reported break-in and potential fire damage to plaintiff's business.

109. Director Coley's unlawful interference with the Officers' deployment extended to ordering them to return to their staging area at police headquarters to await further assignments.

110. It is well-established that the deliberate denial of a citizen's right to available police and fire protection under color of law violates the citizen's constitutional rights pursuant to 18 USCA 1983, *without requiring evidence of racial motive or other malice*. Smith v. Ross 482 F.2d 33, 36 (6CA 1973)

28

## Consequential Damages

111. As a foreseeable and direct consequence of defendant's cancelling the police response to the reported threat of looting and other damage to plaintiff's store and residential apartments on May 31, 2020, the plaintiff suffered extensive economic injury arising from the massive break-in and looting of the Tony Liquor store, including:

    a. Extensive damage to his business property;

    b. Total loss of his Liquor store inventory;

    c. Total destruction of his Lottery dispensing equipment; and

    d. Total loss of $32,500.00 in pre-paid NJ State Lottery scratch off tickets;

112. These losses disqualified plaintiff from being able to apply for business assistance loans from the State and local government, further damaging plaintiffs' ability to recover from the unchecked criminal assault on his business.

113. As the proximate consequence of the foregoing business property loss and inventory losses, plaintiff was unable to remain current on his financial obligations to his business creditors.

114. As the direct consequence of those losses, plaintiff's creditors exercised their right to title and possession of 105 E. Hanover Street, causing plaintiff to lose $17,700.00 in

29

revenue from four apartment units totaling $8,850.00 per month for two months.

**Non-Economic Injury**

115. As the foreseeable and proximate cause of the violent looting of his property and the sudden loss of his business income and property, and his inability to be able to meet his credit obligations, the plaintiff suffered and continues to severe emotional stress arising from the devasting effect of the damage to his unprotected property and the consequential effect of the pecuniary loss on his ability to support his quality of life.

**WHEREFORE**, Judgment is demanded against the defendants City of Trenton and Sheilah Coley, jointly and severally, for compensatory Damages in such amount as shall be established at the trial of this matter together with costs of court, reasonable counsel fees and interest

**COUNT II**

**INTENTIONAL CANCELATION OF AVAILABLE POLICE PROTECTION AND DETECTION SERVICES**

(18 USCA 1983 Denial of Equal Protection of the Law, Selectively Canceling Assignment of Police/Fire Protection Under Color of Law; Compensatory and Punitive Damages Defendants Coley and City of Trenton)

30

116. All prior allegations are incorporated herein by reference as though set forth in full.

117. As the foreseeable consequence of the Defendant Coley's intentional acts of interference with and deprivation of plaintiff's equal access to police and fire protection, plaintiff Arias has suffered the economic and non-economic injuries set forth in COUNT I above.

**Punitive Damages**

118. In addition to Compensatory Damages for his Economic and Non-Economic injuries set forth in Count I, plaintiff seeks the award of Punitive Damages pursuant to the New Jersey Punitive Damages Act (PDA), N.J.S.A. 2A:15-5.9 et seq

119. As set forth in detail above, paras. 53. To 62., defendant Coley's attitude toward plaintiff was expressly negative, refusing to invite him to meetings called for the purpose of improving communications between the Police Department and the Community.

120. As detailed in Paras. 41.- 44., def. Coley told the Mayor's Chief of Staff Manale that she did not like plaintiff, because *"he should be investigated for things that he is doing wrong"*.

121. As detailed in Paras. 45. – 49., long before her May 31, 2020, order barring the dispatched police officers from reaching Tony Liquor, defendant Coley overtly displayed

31

hostility to him and his Latino Merchant associates by abruptly exiting a public meeting of the City Council when he rose up to address the City Council about Director Coley's refusal to meet with him.

122. On May 31, 2020, Director Coley, usurping the role of the sworn Senior Police Officers, improperly countermanded deployment assignments issued by the City of Trenton Public Safety Telecommunicators sworn Police officers to respond to reports of protestors in the process of breaking into and potentially setting fire to Tony Liquor, by ordering them by Police Radio to return to their staging area.

123. Based on defendant Coley's previous career in law enforcement in Newark, New Jersey she could not reasonably have believed that plaintiff Arias would not suffer substantial losses at the hands of the 33 protesters who had massed in front of Tony Liquor.

124. Because she had no legal authority to give any such commands to sworn officers, and because the dispatched officers had no other assignments of equal or greater importance to respond to, defendant's intervention, barring the sworn police officers from responding to the official dispatch to protect plaintiffs' store and residential apartments while the protestors were breaking into plaintiffs' building, was

32

especially egregious because it exposed the plaintiff and his tenants to great harm.

125. Defendant Coley's decision to countermand the deployment of police officers to Tony Liquor on May 31, 2020, was not only beyond the scope of her lawful authority, it was unwarranted by principles of public safety and law enforcement under the prevailing circumstances.

126. By contrast, during the same time period in which defendant Coley countermanded the dispatched police away from Tony Liquor, other Trenton Merchants acknowledged being well served by police officers protecting their business from similar threats of looting and damage without any intervention by defendant Coley or by the Senior Officers of the Trenton Police Department. (Exhibit B)

127. Defendant Coley's decision to arrogate to herself the authority of sworn Senior Police Officers to cancel police protection deployed to plaintiff's property, served no purpose other than to display to Trenton business owner for whom she had expressed personal disapproval a false, inflated image of herself as a Police Commander, exceeding the limits of her administrative authority as a civilian Police Director.

128. In so doing, defendant acted with an unconcealed bias against plaintiff coupled with a reckless disregard for the safety of the plaintiff's resident employee, residential

33

tenants, and the interests of the plaintiff in minimizing the threatened damage to his building, its occupants and its contents of merchandize, lottery tickets and machinery.

129. Defendant Coley's cancelation of Police protection deployed to Tony Liquor was therefore a reckless act done with malice, and/or wanton and reckless indifference to the foreseeable property damage and potential personal injury to plaintiff's tenants in the vicinity of the break-in.

130. In her position as Civilian Director of the Trenton Police Department, defendant Coley is an upper management officer of the City of Trenton and therefore the City of Trenton is liable for the Punitive Damages caused by her actions.

**WHEREFORE,** Judgment is demanded against the City of Trenton and Sheilah Coley jointly and severally for Compensatory Damages and Punitive Damages together with costs of suit and counsel fees.

**COUNT III**

**OBSTRUCTION OF JUSTICE FABRICATION OF OFFICIAL POLICE AND OTHER PUBLIC RECORDS TO CREATE FALSE EVIDENCE BY WHICH TO DEFEAT PLAINTIFF'S DENIAL OF EQUAL POLICE PROTECTION COMPLAINT**

(18 USCA 1983 Denial of Equal Protection of the Law, N.J.S.A. 2C:28-6, Fabrication of Evidence. Compensatory and Punitive Damages all defendants)

34

131. All prior allegations are incorporated herein by reference as though set forth in full.

132. As alleged above in paras. 87. - 105., Trenton Police Officer Timothy Long signed his name and badge number to a Police Incident Report (Exhibit G), bearing a preparation and signature date of June 1, 2020, and containing a narrative report of a purported an interview of plaintiff Arias purportedly conducted by him on June 1, 2020 with regard to the May 31 looting and other damage to plaintiff's Liquor Store at 105 E. Hanover Street, Trenton New Jersey.

133. The plaintiff was never interviewed by Officer Long at any time, and asserts that, during the time period described in the Incident Report, he totally engaged with members of his merchants' association from 11:00 a.m. through 4:00 p.m. during which time there was no appearance of any police officer seeking to take an interview of him.

134. Due to local press commentary on the Trenton Police Department's lack of investigation to identify and arrest any of the 33 looters whose security camera photos were published after the appointment of defendant Coley's dismissal, plaintiff has reason to believe and therefore alleges that the Trenton Police Department, anticipating having to defend its former Police Director's deliberate cancelation of the sworn police officers' deployment of available Police and Fire Fighters, and lack of

35

follow up interview, for 22 days, resorted to creating the
appearance of the omitted interview by the fabrication of Officer
Long's June 1, 2020 Incident Report, and to stage a *follow-up* on
the June 1, 2020, after the Director Coley's dismissal.

135. The June 1, 2020, Incident Report was either fabricated by
defendant Long on his own initiative or under orders or
acquiescence by from superior officers yet to be identified.

136. The fabrication of false official public records for the
purpose of misleading the Court or counsel in a pending or
anticipated lawsuit as to the truth of a material issue of fact
before the Court is a violation of the New Jersey Criminal Code
N.J.S.A. 2C: 28-6. (2) Fabrication of Evidence:

> A person commits a crime of the fourth degree if,
> believing that an official proceeding or investigation
> is pending or about to be instituted, he:
>
> (1) Alters, destroys, conceals or removes any
> article, object, record, document or other thing of
> physical substance with purpose to impair its verity
> or availability in such proceeding or investigation;
> or
>
> (2) Makes, devises, prepares, presents, offers or
> uses any article, object, record, document or other
> thing of physical substance knowing it to be false
> and with purpose to mislead a public servant who is
> engaged in such proceeding or investigation.

137. Unless the defendants are able to produce evidence which demonstrates that the Long Incident Report was accurate, such that there was an actual interview on the date and hour set forth and that, and are able to reconcile demonstrate how the POSS Records of his activities on June 1 were generated using the City's POSS System, based on the evidence available to the plaintiff to date and based on total involvement on that day with his colleagues and the Trenton Mayor Gusciora, plaintiff alleges that the City of Trenton's Police Department has either ordered or condoned the violation of N.J.S.A. 2C:28-6 (2) for the purpose of misleading the Judge and Jury and other participants in the trial of this matter.

138. To the extent that discovery reveals the persons responsible for the preparation approval and propagation of the June 1 Incident Report (Exhibit G) and the POSS or other time records for defendant Long (Exhibits H and I) produced by the City of Trenton in response to plaintiffs' OPRA requests are found to include upper management officials of the City of Trenton, the City of Trenton is subject to both compensatory and punitive damages for deliberate obstruction of justice by resorting to a clear violation of the New Jersey Criminal Code.

**WHEREFORE**, Judgment is demanded against the City of Trenton, Timothy Long, John Doe, and Jane Doe jointly and

severally for Compensatory Damages and Punitive Damages together with costs of suit and counsel fees.

## DEMAND FOR JURY TRIAL

The plaintiffs hereby demand trial by jury as to all issues in the above matter.

## DESIGNATION OF TRIAL COUNSEL

In accordance with R.4:25-4, George T. Dougherty, is hereby designated as trial counsel for the plaintiff in the above matter.

## CERTIFICATION PURSUANT TO R. 1:38

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

## CERTIFICATION OF NO ACTIONS PENDING

Pursuant to R.4:5-1, I hereby certify that to the best of my information, knowledge, and belief the matter in controversy is not the subject of any other action or arbitration proceeding and no other action or arbitration proceeding is contemplated. I also certify that to the best of

38

my information, knowledge, and belief there are no other parties who should be joined in this action.

## DEMAND FOR DISCOVERY OF INSURANCE INFORMATION PURSUANT TO R. 4:10-2(b)

Pursuant to R. 4:10-2(b) demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment ( )YES

( )NO.

If the answer is "yes", attach a copy of each or in the alternative state, under oath or certification (a) number; (b) name and address of the insurer or issuer; (c) inception and expiration dates; (d) name and address of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; (g) medical payment limits; (h) name and address of person who has custody and possession thereof; (i) where and when each policy or agreement can be inspected and copied.

## NOTICE PURSUANT TO RULE 1:5-1A AND 4:17-4C

Please take notice that the undersigned hereby demands, pursuant to the above cited Rules of Court, that each party serve pleadings and Interrogatories and receiving Answers

39

thereto serve copies of all such pleadings and answers to Interrogatories and all documents, paper and other material referred to herein, received from any party, upon the undersigned attorney and take notice that this is a continuing demand.

Date: 12/21/21

KATZ & DOUGHERTY, LLC
Attorneys for Plaintiffs

By:
George T. Dougherty

**CERTIFICATION**

Amin Arias, being of full age and duly sworn upon his oath says:

1.  I am the plaintiff named in the Complaint in this matter.

2.  I have read the foregoing Complaint and am familiar with its contents.

3.  All the allegations contained in the Complaint are true to the best of my personal knowledge, information and belief.

4.  I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: _12 - 21 - 2021_

AMIN ARIAS

41

# EXHIBIT A



EXHIBIT B

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 08-15-2020

Name of Business: POPO CHESE

Address: 8 N BROAD ST TRENTON NJ 08608

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_Veronica Canalio_ signed and dated 05-15-2020

Canelio Supermarket

Name of Business: _____

Address: _18-20- N BROAD ST TRENTON NJ 08608_

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____  8/14/20  signed   and   dated  09-15-2020

Name of Business: ___HARMAN ONE. LLC___

Address: ___4 North Broad st  Trenton NJ 08608___

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

8/14/20 _____ signed and dated 05-14-2020

Name of Business: Fuji News

Address: 2 North Broad St, Trenton NJ 08608

Witnessed by: _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated O 8 / 5 - 2 0 2 0

Name of Business: FABIO - PIZZA

Address: 105 - ESTATE ST

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 09-19-2020

Name of Business: _R Giaquinto Shoe Repair_

Address: _115 S Warren St._

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 09-18-2020

Name of Business: CROW FRIED CHICKIN

Address: 2 NT BROWD ST

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ R PATEL _____ signed and dated 05-15-2020

Name of Business: DUNKiN DONUTS

Address: 47 East State Street

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 08-14-2020

Name of Business: Boost Mobile

Address: 45 E State Street

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


   On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

   Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

   I am willing to offer my testimony about my experiences when appropriate.

_____   signed   and   dated  05-12-2020

Name of Business: _WILD    HORSE._

Address: _317E  state st_

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 0 8 - 15 - 20

Name of Business: Colonial Farm market

Address: 147 E State Street trenton NJ 08608

Witnessed by

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


  On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration.  I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store.  I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

  Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

  I am willing to offer my testimony about my experiences when appropriate.

_____  signed  and  dated  09 - 15 - 2020

Name of Business: Quick Stop mini Mart

Address: 9 E Stale Street (Trenton) nf

Witnessed by,

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated $08.15.3030$

Name of Business: _BEAVRY CONCO_

Address: _17 6 SIDE ST_

Witnessed by _JAY CHO_

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_Mruneli Patel_   signed   and   dated   03-15-2020

Name of Business: _Subway_

Address: _10 S Warren St._

Witnessed by _[signature]_

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_Patricia Kohlmeyer_ signed and dated 05-15-2020

Name of Business: Columbus Pizza

Address: 8 South Warren st Trenton L J 08608

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 8-14-2020

Name of Business: Jose A. Santoja

Address: 113 S. Warren St. Trenton, NJ

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.


_____   signed   and   dated  05-1>-2020

Name of Business: Am Tax & Wireless LLC

Address: 17 East State St. Trenton NJ 08608

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


  On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration.  I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store.  I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

  Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

  I am willing to offer my testimony about my experiences when appropriate.

08-15-2020

_____  signed   and   dated

Name of Business: Havis Jewelry

Address: 3E State Street Trenton NJ 08608.

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_Rose Toper, @ Halema_ signed     and     dated   08-15-2020

Name of Business: _Halema Islamic fashion_

Address: _122 east state street 08608_

Witnessed by _[signature]_

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


   On May 31, 2020, starting around 8:30 PM, I was very concerned
about damage being done to my business or building by the crowds
of people in downtown Trenton who were threatening to break
into, loot and or burn shops following the wind down of a
peaceful demonstration.  I learned that your business, Tony's
Liquor on Hanover Street was broken into, looted and burned,
while the police and fire fighters were ordered to turn back
from responding to your store as after being directed by the
City's Dispatchers in response to reports from your personnel
for police and fire protection, with a crowd of people
threatening to break in, loot and burn your store.  I saw the
video pictures of the looting and enormous damage they did when
the police failed to arrive.

   Unlike your store, the police and fire fighters arrived at my
property and protected it against the looting, potential fire
burning of my business before the rioters backed off

   I am willing to offer my testimony about my experiences when
appropriate.

_____     signed   and   dated   ▓▓▓▓▓▓▓▓▓▓
                                                    08.15.2020

Name of Business: _Better Mornings._

Address: _17 South Trenton NJ 08611._

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:

  On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

  Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

  I am willing to offer my testimony about my experiences when appropriate.

Geranny Peralta   signed   and   dated   05-15-2020

Name of Business: FAMILY DOLLAR

Address: 117 E STATE ST TRENTON 08608

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ Demand 3/18/22 _____ signed and dated 0 8 - 1 5 - 2 0 2 0

Name of Business: BITS N PIECES INC

Address: 104 EAST STATE STREET

Witnessed by _____

Amin Arias

C/o Tony's Liquor

Re: May 31, 2020 attacks of merchants in Trenton.

Mr. Arias:


On May 31, 2020, starting around 8:30 PM, I was very concerned about damage being done to my business or building by the crowds of people in downtown Trenton who were threatening to break into, loot and or burn shops following the wind down of a peaceful demonstration. I learned that your business, Tony's Liquor on Hanover Street was broken into, looted and burned, while the police and fire fighters were ordered to turn back from responding to your store as after being directed by the City's Dispatchers in response to reports from your personnel for police and fire protection, with a crowd of people threatening to break in, loot and burn your store. I saw the video pictures of the looting and enormous damage they did when the police failed to arrive.

Unlike your store, the police and fire fighters arrived at my property and protected it against the looting, potential fire burning of my business before the rioters backed off

I am willing to offer my testimony about my experiences when appropriate.

_____ signed and dated 0 8- 1 5 - 2 0 2 0

Name of Business: Rainbow

Address: 109 E. State St

Witnessed by _____

EXHIBIT C

## Fwd: Transcripts

gtd@katzanddougherty.com | THU JUL 16 | 3 min read

Please print out if possible.

*George Dougherty*



Katz&
Dougherty LLC

GEORGE E. DOUGHERTY
Attorney at Law

=========== Forwarded message ============
From: William Osterman <williamosterman@me.com>
To: "George Dougherty"<gtd@katzanddougherty.com>
Date: Thu, 16 Jul 2020 14:14:32 -0400
Subject: Transcripts
=========== Forwarded message ============

I should've include these with the individual emails.

Radio transmission:
*"Unit 1, I want every unit to continue to maintain their assigned post. I want the officers that are assigned to those various areas to respond to those calls. We can not allow ourselves to be pulled off post so something else can happen. I have additional officers that are staged at city hall. If you need officers let me know so that I can tell you what, who you can dispatch,"*

Peterson's Breaking News interview:
*Well the rationale is, is we had over 200 police officers swarming this city, um between Trenton Police officers and the partners we had here to assist us, um, I had just come from that area. I had just been behind the Bucks County SWAT team as they were unloading onto our streets and I knew that police officers were in that area and that I HAPPENED upon a group of officers and they were all running and scattering and I was like, "Stop, where you going?" And when they told me I was like, "What's your mission?" And because they couldn't tell me, their mission, what they were going to do there, I know that if you don't know why you're going you don't have an exit strategy. And because of all the chaos that was going on in the city, I knew that just letting them go in head first was going to be a dangerous situation. My officers were unequipped, inexperienced and lacked the training to disperse a crowd of that nature. And because I had the knowledge of all that, I let the people who had had the training, the state police, Bucks County SWAT team handle that particular area. <u>When I had my officers, when I said go back to headquarters, it was because we had a command post here in the parking lot of headquarters</u>*

and that command post was ke... .ng track of all the resources that were here ...at city. That command post was tracking every police officer so we knew where their assignment was. When they completed their assignment they were to come back here and then go get their new assignments so then this way we knew we weren't missing anybody we hadn't lost anybody. Everybody was safe and we were still working to keep the city as safe as possible.

# EXHIBIT D



**Metro Public Adjustment, Inc.**

3551 Bristol Pike
Bensalem, PA 19020



53    53-IMG_7890        Date Taken: 6/15/2020

𝒟

## Metro Public Adjustment, Inc.

3551 Bristol Pike
Bensalem, PA 19020



40    40-IMG 7877    Date Taken: 6/15/2020

**Metro Public Adjustment, Inc.**

3551 Bristol Pike
Bensalem, PA 19020



11    11-IMG_7848                Date Taken: 6 15 2020

EXHIBIT E

TRENTON

# Over a year after rioters damaged liquor store, cops looking for looters to charge



Trenton police are looking for help identifying the following people, who they say were inside Tony Liquor during a riot in the city on May 31, 2020. *Courtesy photos*

*The May 2020 riot in downtown Trenton damaged dozens of stores and left two police vehicles in shambles.*

**Kevin Shea** *For Times of Trenton*

The Trenton Police Department announced Wednesday it's looking for the public's help in identifying 33 people who burglarized and looted a liquor store downtown during a riot last year.

Federal and state authorities have charged four suspects with serious crimes accusing them of civil disobedience and trying to light police cars on fire during the May 31, 2020, riot, which followed a peaceful protest march.

after getting a report that vandals were trying to start fires in the ransacked shop. (The office later cleared Coley of any wrongdoing.)

The Latino Merchant Association of New Jersey held a press conference at Tony Liquor the day after the riot, asking for more police protection and assistance from the city.

On Wednesday, Interim Police Director Steve Wilson, in his first initiative since being named to the post last week, announced police had photographs of 33 people inside the shop and are looking for tips from the public — 14 months later. All prior leads have been exhausted, police said.

"We are building a team with the community, and we can't do it all without the good people of Trenton," Wilson said. "We need their help too sometimes."

The owner of Tony Bar could not immediately be

EXHIBIT F



# EXHIBIT G

# INCIDENT/INVESTIGATION REPORT

**Agency Name:** Trenton Police Department

**ORI:** NJ 0111100

**Case#:** 20-005522

**Date / Time Reported:** 06/01/2020 13:17 Mon

**Last Known Secure:** 05/31/2020 20:45 Sun

**At Found:** 06/01/2020 08:00 Mon

## INCIDENT DATA

**Location of Incident:** 105 E HANOVER ST, Trenton NJ 08608

**Gang Relat:** NO
**Premise Type:** Liquor Store
**Zone/Tract:** N1

**#1 Crime Incident(s):** Burglary-forcible Entry 2C:18-2A(1) (Com)
**Weapon / Tools:** PHY FORCE-HANDS,FEET,FIST
**Entry** | **Exit** | **Security** | **Activity**

**#2 Crime Incident:** Theft By Unlawful Taking Or Disp-moveable Property – 2C:20-3A (Com) F
**Weapon / Tools:**
**Entry** | **Exit** | **Security** | **Activity**

**#3 Crime Incident:** ( )
**Weapon / Tools:**
**Entry** | **Exit** | **Security** | **Activity**

**MO:** Means Of Entry/Broke/removed Door Panel, Means Of Entry/Prying Tool, Means Of Entry/Bodily Force, Point Of Entry/Front Door

## VICTIM

**# of Victims:** 1
**Type:** INDIVIDUAL / NOT LAW

**V1 Victim/Business Name (Last, First, Middle):** ARIAS, AMIN
**Injury:** None
**Victim of Crime #:** 1,2
**DOB:** 04/25/1976 Age 44
**Race:** W
**Sex:** M
**Relationship To Offender:** OK
**Resident Status:** Non-Resident
**Military Branch/Status:**

**Home Address:** 16 JERICHO DR , Trenton, NJ 08690-2002
**Home Phone:** ▮▮▮▮

**Employer Name/Address:** TONY'S BAR 7 LIQUOR 629 WHITTAKER AV (OWNER)
**Business Phone:** ▮▮▮▮
**Mobile Phone:**

**VYR** | **Make** | **Model** | **Style** | **Color** | **Lic/Lis** | **VIN**

**CODES:** V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

## OTHERS INVOLVED

**Type:**
**Code** | **Name (Last, First, Middle):** | **Injury:** | **Victim of Crime #** | **DOB** Age | **Race** | **Sex** | **Relationship To Offender** | **Resident Status** | **Military Branch/Status**

**Home Address:**

**Employer Name/Address:**
**Home Phone:**
**Business Phone:**
**Mobile Phone:**

**Type:**
**Code** | **Name (Last, First, Middle):** | **Injury:** | **Victim of Crime #** | **DOB** Age | **Race** | **Sex** | **Relationship To Offender** | **Resident Status** | **Military Branch/Status**

**Home Address:**

**Employer Name/Address:**
**Home Phone:**
**Business Phone:**
**Mobile Phone:**

## PROPERTY

**I** = None   **2** = Burned   **3** = Counterfeit / Forged   **4** = Damaged / Vandalized   **5** = Recovered   **6** = Seized   **7** = Stolen   **8** = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI # | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|------|------|---------------|-------|----|----|---------------------|------------|---------------|
| 88 | 1,7 | | $1.00 | I | | PENDING INVENTORY OF PROPERTY | | |
| 88 | 7 | | $1.00 | I | | PENDING INVENTORY OF PROPERTY | | |

## Status

**Officer/ID#:** Long, Timothy   (CIB, ROB) (5546)

**Invest ID#:** Turner, Angel L   (CIB, ROB) (5972)

**Outstanding Stolen Val [Total Stolen]:** $1.00 [$1.00]

**Complainant Signature**

**Supervisor:** Pagnotta, Daniel A III (SOPS) (5182)

**Case Status:** Pending-active   06/01/2020
**Case Disposition:**

R_CS1IBR
Printed By: 6634, -ONLYSETUP
Sys#: 164133

**Page 1**

07/13/2021 11:00

# INCIDENT/INVESTIGATION REPORT

*Trenton Police Department*

Case # 20-005522

| Status Codes | | 1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown | | | | |
|---|---|---|---|---|---|---|
| | IBR | Status | Quantity | Type Measure | Suspected Type | |
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers

Suspect Hate / Bias Motivated:

NARRATIVE

---

R_CS2IBR

# REPORTING OFFICER NARRATIVE

| Trenton Police Department | | OCA |
|---|---|---|
| Victim | Offense | 20-005522 |
| ARIAS, AMIN | BURGLARY-FORCIBLE ENTRY | Date / Time Reported |
| | | Mon 06/01/2020 13:17 |

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case # 20-005522

Victim: Amin Arias, H/M, DOB 04-25-1976, 5`7 ft, 170 lbs, SOC # ▬▬▬▬
105 East Hanover Street, Trenton N.J. 08608 Phone ▬▬▬▬

Point of Entry/Exit: Store front door (Forced Entry)

Property Taken: Property Loss Form Pending
(consisting of a multitude of various liquor bottles and store equipment)

On June 1, 2020 at approximately 1212 hours I Officer Timothy Long was detailed to 105 East Hanover Street on the report of a burglary that occurred over night. I was attired in the uniform of the day with police identifiers prominently displayed and operating marked police vehicle 308.

Upon my arrival, I was met by a Hispanic male identified as Amin Arias. He is the owner of Tony`s Liquor Store and was reporting the burglary. Upon his arrival on this date, he found what he had expected from the night prior. The City of Trenton experienced Rioting on the night prior in a number of locations. During the riots there was numerous incidents of violence, burglaries, looting and arson.

Once Arias arrived at his business, he immediately observed the front metal barrier gate broken and pushed in as well as the door broken in. It was obvious the suspects forced their way in. Once inside he immediately observed all the shelves of his business to be almost cleared of all liquors. While speaking with Arias, he was advised that he needed to do a complete inventory of his stock to determine the total amount of various liquors that have been taken. He was given a Trenton Police Property Loss Form to list his losses and hand in to the Criminal Investigation Bureau.

It should be noted Tony`s Liquor Store has a video surveillance system that may have captured the incident. There`s also a possible surveillance system located at the Mercer County Community College at the corner of East Hanover and South Broad Street. Additional surveillance systems locations include 140 East Hanover Street and 135 East Hanover Street.

Arias and I spoke on the current climate in the City Of Trenton and he stated he wanted to organize with a Latin Business Organization to help target harden the local businesses in the area. I advised Arias that he would be contacted by the Trenton Criminal Investigation Bureau to follow up on the investigation. Sergeant C. Kurfuss from the Burglary section was advised on the incident. Also due to the current rioting and mass damages from them, the crime scene was not processed and the Trenton Police Crime Scene Unit was advised on the incident. Nothing further to report at this time.

## Incident Report Related Property List

*Trenton Police Department*

OCA: *20-005522*

| 1 | Property Description<br>*PENDING INVENTORY OF PROPERTY* | | | Make | | | Model | | | | Caliber | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Color | | Serial No. | | Value | | Qty | | | Unit | | Jurisdiction | |
| | | | | | *$1.00* | | *1.000* | | | | | *Locally* |
| Status<br>*Stolen* | | Date<br>*06/01/2020* | NIC # | | State # | | | Local # | | | OAN | |
| Name (Last, First, Middle)<br>*Arias, Amin* | | | | | | DOB<br>*04/25/1976* | | Age<br>*44* | | Race<br>*W* | | Sex<br>*M* |

Notes

# EXHIBIT H

| CallTime | CaseID | District | IDKey | Nature | PrimaryUn | Street |
|----------|--------|----------|-------|--------|-----------|--------|
| 06/01/2020 14:45:11 | | E | 20200589€ | MV VIOLAT | 591 | 107 CHAMBERS ST |
| 06/01/2020 11:29:08 | | N | 202005892 | RESIDENTI/ | 234 | 85 PHILLIPS AVE |
| 06/01/202( | 20005522 | N | 202005887 | BURGLARY | 234 | 105 E HANOVER ST |
| 06/01/202( | 20005516 | W | 202005884 | BURGLARY | 234 | 1074 STUYVESANT AVE |
| 06/01/2020 16:20:00 | | N | 20200590C | DISORDERI | 361 | 53 BOND ST |
| 06/01/2020 21:19:48 | | E | 202005914 | SUSPICIOU | 361 | 534 TYLER ST |
| 06/01/202( | 20005551 | E | 202005903 | THEFT REP( | 361 | 102 S OLDEN AVE |
| 06/01/202( | 20005547 | E | 202005904 | MVA WITH | 331 | GREENWOOD AVE/S OLDEN AVE |
| 06/01/2020 13:01:48 | | E | 202005894 | FRAUD SPE | 361 | 748 QUINTON AVE |
| 06/01/202( | 20005558 | E | 202005914 | DOMESTIC | 267K | 35 S COOK AVE |
| 06/01/2020 19:51:56 | | E | 202005908 | OTHER CRI | 361 | 669 S OLDEN AVE |

EXHIBIT I



# City of Trenton

319 East State Street
Trenton, NJ 08608
(609) 989-3165

## Open Public Records Act (OPRA) Request

**Reference # OPR-2021-00886**

**Requestor**
**Name:** Amin  Arias
**Business Name:**
**Address:** Tony Liquor 105 E Hanover Street NJ 08618
**Phone # (609) 880-4565**
**Fax #**
**Email:** tonyliquore105@gmail.com

**Record Request**
**Request:** Requesting recording BWC of the stop by Timothy Long on June 1, 2020 at approximately 1212 hours at 105 E. Hanover Street, Trenton, New Jersey concerning a burglary reported.

**Does this record fall under the common law?**

**Please set forth your interest in the subject matter contained in the requested material:**

**How would you like to receive the information requested?**
Pick Up

Officer T Long wasn`t wearing a Body Camera during the requested incident.

# Civil Case Information Statement

## Case Details: MERCER | Civil Part Docket# L-000580-22

**Case Caption:** ARIAS AMIN  VS CITY OF TRENTON

**Case Initiation Date:** 03/30/2022

**Attorney Name:** GEORGE T DOUGHERTY

**Firm Name:** KATZ & DOUGHERTY, LLC

**Address:** 4020 QUAKERBRIDGE RD

MERCERVILLE NJ 086190000

**Phone:** 6095871199

**Name of Party:** PLAINTIFF · Arias, Amin

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** CIVIL RIGHTS

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 12 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Amin Arias?** NO

**Are sexual abuse claims alleged by: Cikara Tomi, Inc.?** NO

**Are sexual abuse claims alleged by: Nuevo Camino, LLC?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
#### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

03/30/2022
Dated

/s/ GEORGE T DOUGHERTY
Signed