**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMIN ARIAS,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF TRENTON, *et al.*,<br><br>    Defendants. | Civil Action No.: 22-02585(FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

  Presently before the Court is a motion to dismiss plaintiff Amin Arias' ("Plaintiff")[1] Complaint against the City of Trenton, and individuals Sheilah Coley ("Coley"),[2] Timothy Long ("Long")[3], among others, (together "Defendants")[4] for failure to state a claim pursuant to Fed. R. of Civ. P. 12(b)(6). Plaintiff's claims arise from Defendants' alleged violations of Plaintiff's Equal Protection and Due Process rights, predicated on 42 U.S.C. § 1983, in connection with the Trenton police department's response to complaints of vandalism and suspected arson in the aftermath of

---

[1] Nuevo Camino, LLC, the owner of a building located at 105 East Hannover St. in Trenton, New Jersey, and Chikara Tomi, Inc., the owner and operator of New Jersey Licensed Alcohol Beverage retail establishment doing business as "Tony Liquor" on the ground floor of the building at 105 East Hannover St., are also listed as plaintiffs in the above-captioned lawsuit. For the purposes of this Opinion, however, "Plaintiff" refers to Mr. Arias. Plaintiff is the sole member of Nuevo Camino, LLC, and is the president and sole stockholder of Chikara Tomi.

[2] Defendant Coley is the former Police Director of the City of Trenton.

[3] Defendant Long is a sworn police officer of the City of Trenton.

[4] The remaining defendants John Doe, Jane Doe, and ABC Co. are fictitious names designated by Plaintiff as being one or more individuals or entities that may be identified through pre-trial discovery as having liability for Plaintiff's losses.

protests related to the murder of George Floyd.  For the reasons set forth below, Defendants'
Motion is **GRANTED**.  All claims against Defendants are dismissed.

## I.      FACTUAL AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's Complaint and the attached exhibits.
Plaintiff is a resident of the Township of Hamilton and the owner of Tony Liquor, a liquor store
located in downtown Trenton, New Jersey, at 105 East Hannover St.  (Complaint ("Compl.") ¶¶
1.c-d, ECF No. 1.)  Plaintiff also leases four residential dwelling units in the same building through
Nuevo Camino, LLC.  (*Id*. ¶ 1.d.)  Following the murder of George Floyd on May 26, 2020, several
protests were organized across the country to denounce police brutality.  On Saturday, May 30,
2020, protestors organized in Trenton to demand police reform.  (*Id*. ¶ 27.)  The protest was
allegedly non-violent, and at the end of the day, the crowds dispersed without issue.  (*Id*.)  However,
according to Plaintiff, he had learned of a second protest planned for Sunday, May 31, and voiced
concern to Trenton Mayor Reed Gusciora that merchants could be subject to arson and looting.
(*Id*. ¶ 30.)  Plaintiff alleges that he and his fellow merchants received assurance from Mayor
Gusciora that the City's police department was alerted to the need to protect merchants.  (*Id*. ¶ 31.)

On the evening of Sunday, May 31st, Plaintiff allegedly observed that the streets of
Trenton's downtown business zone were lined with police vehicles from the City, the State Police
and the Mercer County Sheriff's Office.  (*Id*. ¶ 32.)  Plaintiff alleges that while protesters were
reasonably peaceful at the start of the protest, by 8:00 PM, a group of individuals set fire to a police
vehicle parked on North Broad Street, in the near vicinity of the Capital Steps and Plaintiff's liquor
store.  (*Id*. ¶¶ 33-34.)

At approximately 7:30 PM, Plaintiff alleges that Trenton Police Director, Coley, was actively engaged in deploying and monitoring police activity in the Downton Capital District center of Trenton.  (*Id*. ¶ 54.)  During that timeframe, Trenton police protection for Trenton's Downtown District was allegedly supplemented by police officers from Morrisville and other surrounding townships.  (*Id*. ¶ 55.)  According to Plaintiff, at 8:46 PM, he was at home when his employee called to inform him that a crowd of people were preparing to break into his store with large masonry blocks.  (*Id*. ¶ 57.)  Plaintiff allegedly called the City's Radio Room dispatchers to report the impending break and entry.  (*Id*. ¶ 58.)  Moments later, Plaintiff allegedly contacted the dispatchers a second time to report smoke rising up from the first floor of the store to the upper floor apartments.  (*Id*. ¶ 59.)

In response to Plaintiff's 911 emergency call, nine police officers, who had been stationed at police headquarters awaiting assignments, were allegedly timely dispatched by Public Safety Telecommunicators to Plaintiff's liquor store.  (*Id*. ¶ 61.)  However, Plaintiff alleges that while enroute to his building, Coley counter-ordered the dispatched officers to withdraw from the detail and return to the staging area, reasoning that the specific officers lacked training in fire suppression and an "exit strategy."  (*Id*. ¶ 62-64.)

Plaintiff avers that although Trenton police officers responded to many threats of vandalism involving other Trenton businesses at the time of the incident, there is no record of Coley canceling any other dispatched assignment due to lack of training, or experience, or for any other reason.  (*Id*. ¶ 66.)  According to Plaintiff, Coley did not order the dispatched officers to withdraw based on valid concerns, but rather Coley ordered the withdrawal of police protection

due to personal animus against Plaintiff borne out of prior interactions between Coley and Plaintiff.[5]  (*Id.* ¶ 48.)

As a result of the withdrawn police protection, Plaintiff alleges that citizens were undeterred from breaking into Plaintiff's liquor store using large concrete blocks to smash through the exterior windows and doors of the building and stripping the store of almost its entire inventory of beverages.  (*Id.* ¶¶ 67-68.)  Plaintiff further alleges that security cameras captured individuals breaking into the store, smashing open Plaintiff's lottery ticket dispenser, and removing pre-paid scratch-off tickets.  (*Id.* ¶ 69.)

The following day, Plaintiff alleges that he complained to Mayor Gusciora about the lack of initiative from the police to interview him or to search for fingerprints.  (*Id.* ¶ 71.)  Despite his complaint on June 1, 2020, Plaintiff alleges that neither Coley, nor any police officer under her administrative direction, appeared at his liquor store until June 23, 2020, to inquire about the extent

---

[5]     Plaintiff also alleges that Coley failed to respond appropriately to a prior incident in which a customer had refused to show identification when purchasing alcohol and instead brandished a handgun.  (*Id.* ¶ 8.)  In that regard, Plaintiff alleges that despite assuring him that she would look into the police department's lack of follow through in identifying the customer or his accomplice, Coley misled him by later insisting that she had already told him of her efforts to follow up on the status of the investigation when she in fact had not.  (*Id.* at ¶¶ 17, 37-38.)  Further, Plaintiff alleges that despite his position as an officer of the Latino Merchants' Association, he was not invited to a meeting between members of the Latino community and Coley, and was later informed by the Chief of Staff that "Coley doesn't like [Plaintiff]" because "she thinks that he should be investigated for things that he is doing wrong." (*Id.* ¶¶ 17, 42-43.)  Notwithstanding these incidents, Plaintiff alleges that he requested to meet with Coley to discuss civic issues, but that Coley refused to meet with him.  (*Id.* ¶ 45.)  Considering Coley's alleged refusal to schedule meetings with him to discuss relations between his organization and City leadership, Plaintiff allegedly attended a public City Council meeting at which he intended to report Coley's refusal to meet.  (*Id.* ¶ 46.)  However, Plaintiff alleges that upon seeing Plaintiff preparing to address the City Council, Coley abruptly left the chambers.  (*Id.* ¶ 47.)

of damage to his property and / or to gather information, such as fingerprints and photographs, from which to identify any of the 33 individuals that had broken into his store.[6]  (*Id.*)

On June 23, 2020, Plaintiff alleges that Trenton Police Captain Mark Keiver, Police Officer Angel Turner, and Detective Sergeant Christopher Kurfuss visited Plaintiff's liquor store to speak with Plaintiff.  (*Id.* ¶ 74.)  At that time, Plaintiff allegedly declined to be interviewed by the police as twenty-two days had lapsed since his complaint made on June 1, 2020.  (*Id.* ¶ 76.)  In response, Plaintiff alleges that Capt. Keifer stated "we know you were not happy with the service . . . and that's why we're here."  (*Id.* ¶ 84.)

On July 13, 2020, Plaintiff met with Sgt. Karfuss for a second time.  (*Id.* ¶¶ 87-88.)  At the meeting, Sgt. Karfuss allegedly stated that he was following up on an earlier interview on June 1, 2020, between Police Officer Timothy Long and Plaintiff.  (*Id.* ¶ 89.)  When Plaintiff denied knowledge of the interview, Sgt. Karfuss allegedly provided Plaintiff with an "Incident Report" dated June 1, 2020.  (*Id.* ¶ 90.)  The Incident Report states that Officer Long was detailed at 12:12 P.M. on June 1, 2020, to Plaintiff's liquor store.  (*See* Incident Report, Ex. G.)  Plaintiff denies being interviewed by Officer Long on that day, or at any other time, and alleges that the report was fabricated to create a paper record of an investigation into the May 31, 2020 break-in which never occurred.  (Compl., ¶ 95.)  According to Plaintiff, evidence of the fabrication of the report includes an incorrect description of Plaintiff's height and weight, as well as Plaintiff's employer.  (*Id.* ¶ 96.)  Further, Plaintiff alleges that from 11:00 A.M. through 1 P.M. on June 1, 2020, Plaintiff could not

---

[6]     Plaintiff alleges that although there had been no police interview regarding the incident, Plaintiff received a call from Police Officer Angel Turner on June 3, 2020.  (*Id.* ¶ 80.)  During the call, Officer Turner allegedly asked whether she could obtain photographs of the individuals who broke into Plaintiff's store from the store's security cameras.  (*Id.*)  However, Officer Turner allegedly stated that "it was not necessary" to interview Plaintiff as to his knowledge of the break in and his losses.  (*Id.*)  Consequently, Plaintiff allegedly declined to supply the requested security camera photos.  (*Id.*)

have met with Officer Long as he was fully occupied preparing for, and conducting, a store-front press conference regarding the damages to his liquor store.  (*Id*. ¶ 97.)

On March 30, 2022, Plaintiff filed an initial Complaint in New Jersey State court in which he alleged the following claims under § 1983: deprivation of civil rights to equal police and fire protection; intentional cancellation of available police protection and detective services; and fabrication of evidence.  The matter was later removed to this Court, and on June 23, 2022, Defendants moved to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).  (Motion to Dismiss ("Mot. Dismiss"), ECF No. 4.)

## II.     STANDARD OF REVIEW

### a.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented."  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. 11-4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Thus, to survive a Rule

12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

## III.   DISCUSSION

### a.  Section 1983 Equal Protection Claims

Plaintiff argues that Defendants deprived him of his rights to equal police and fire protection and intentionally cancelled available police protection in violation of § 1983.  (Compl., ¶¶ 105-130.)  In Plaintiff's view, Coley violated § 1983 by usurping her powers as Police Director and intentionally cancelling the dispatch of police officers to Plaintiff's business who had already been sent by the Trenton Police Public Safety Telecommunicators in response to complaints of looting and arson.  (*Id.* ¶ 107.)  For the purposes of this Opinion, the Court addresses the two equal protection claims together.

Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.  The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const.

Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). When a classification involves "fundamental personal rights" or "suspect distinctions such as race, religion, or alienage," it is subject to heightened scrutiny. *Cabrera v. Att'y Gen. United States*, 921 F.3d 401, 404 (3d Cir. 2019) (citing *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)). But a classification that involves neither fundamental rights nor suspect classes is subject to the more deferential rational-basis review. *Id.* (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)). Under the rational basis test, government action will be upheld so long as it rationally furthers a legitimate, articulated state purpose. *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973).

Here, Plaintiff asserts a class of one equal protection claim based on the alleged differential treatment arising out of irrational animus by Coley. Plaintiff alleges that Coley violated his rights to equal police protection when she intentionally cancelled the police dispatch, despite permitting the police to respond to complaints from several other nearby Trenton merchants. (Compl., ¶ 107.) To establish a "class of one" claim, a plaintiff must allege that the defendant treated him differently from other similarly situated persons, such differential treatment was intentional, and there was no rational basis for the difference in treatment. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

"Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Under the rational basis standard,

"any rational ground for the conduct in question will suffice to defeat the class-of-one claim." *Aulisio v. Chiampi*, 765 F. App'x 760, 764–65 (3d Cir. 2019).

Defendants argue that they are entitled to qualified immunity on Plaintiff's equal protection claims.  (*See* Defendants' Motion to Dismiss ("Mot. to Dismiss"), pp. 18-21.)  Specifically, Defendants contend that Plaintiff has failed to establish that a constitutional right has been violated, let alone a clearly established constitutional right.  (*Id.*, at pp. 20-21.)

Qualified immunity protects a government official from civil liability and suit "insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity considers both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  As such, qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts partake in a two-step analysis to evaluate qualified immunity defenses: "We first determine whether a right has been violated.  If it has, we then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful." *Williams v. Secretary Pennsylvania Department of Corrections*, 848 F.3d 549, 557 (3d Cir. 2017).  However, "[c]ourts are free to examine the two prongs of the qualified immunity analysis in either order. For efficiency, a court may elect to consider the 'clearly established' prong first because, if that prong is not satisfied, then qualified immunity applies." *Muth v. Woodring*, 666 F. App'x 137, 139 (3d Cir. 2016) (citations omitted).

"[T]he burden is on the defendants to establish they are entitled to qualified immunity." *E. D. v. Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019). "Officials demonstrate they are entitled to qualified immunity only if they can show that a reasonable person in their position at the relevant time could have believed, in light of clearly established law, that their conduct comported with recognized legal standards." *Id.*

As to the second prong, "[t]he inquiry focuses on the state of the relevant law when the violation allegedly occurred." *Williams*, 848 F.3d at 570. "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018). Stated simply, the rule must be "settled law." *Id.* A principle is settled law if it is dictated by "controlling authority" or a "consensus of cases of persuasive authority." *Id.* at 589–90 (internal quotations and citation omitted). "It is not enough that the rule is suggested by then-existing precedent." *Id.* at 590. Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

The Third Circuit looks to the following courts to determine whether a right is clearly established: the Supreme Court, the Third Circuit, and its sister circuits. *See Porter v. Pennsylvania Department of Corrections*, 974 F.3d 431, 449 (3d Cir. 2020) ("[W]e look first for applicable Supreme Court precedent. If none exists, we consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals that could clearly establish a right for purposes of qualified immunity.") (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (internal citations, quotation marks, and alterations omitted)). The court may consider all relevant cases, not just those cited by the parties. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

The Court begins its analysis with the clearly established prong.[7]  Defendants argue that a generalized right to police protection is not clearly established.  (*See* Mot. to Dismiss, p. 20.) Defendants are correct that no general constitutional right to police protection has been recognized by courts.  Indeed, the Supreme Court and the Third Circuit have held that there is no such right. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989) (explaining that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"); *Burella v. City of Phila.*, 501 F.3d 134, 140 (3d Cir. 2007) (finding no constitutional right to police protection); *see also Davies v. Lehighton Police Dep't*, No. 91-3651, 1991 WL 125895, at *1 (E.D. Pa. June 27, 1991) (noting that "there is no general constitutional right to police protection, adequate or otherwise") (internal citation omitted); *Reiff v. City of Phila.*, 471 F. Supp. 1262, 1265 (E.D. Pa. 1979) ("The Constitution does not explicitly or implicitly provide a right to adequate police protection.").

---

[7]     While the Court does not reach the question of whether Plaintiff has adequately alleged a violation of a constitutional right, it does appear that Plaintiff has stated a class of one claim.  As stated above, to assert a "class of one" claim, a plaintiff must allege that the defendant treated him differently from other similarly situated persons, such differential treatment was intentional, and there was no rational basis for the difference in treatment.  *Hill*, 455 F.3d at 239.  Individuals are similarly situated when they are "alike 'in all relevant aspects.'"  *Startzell*, 533 F.3d at 203 (citation omitted).  Here, it appears that Plaintiff's liquor store is similarly situated in all relevant aspects to the other stores that allegedly received police protection.  Notably, notwithstanding Defendants' contention that Plaintiff does not specify the geographic location of the other stores, it is evident from the letters from the other merchants attached to Plaintiff's Complaint that these stores are all located within a very short radius of a few blocks from Plaintiff's store and would have likely been subject to police protection by Trenton police officers in the same department as those who were initially dispatched to Plaintiff's store.  (*See* Compl., Ex. B.)  Moreover, although Defendants argue that there was a rational basis in the form of a city-wide emergency necessitating discretionary decision-making concerning the allocation of limited resources, Plaintiff describes several interactions with defendant Coley in his complaint that suggest the possibility of improper motive behind Coley's order to withdraw police protection from Plaintiff's store.  *See supra.*

However, contrary to Defendants' position, the right at issue, here, is not simply a generalized right to police protection. The right allegedly violated must be "define[d] . . . at the appropriate level of specificity." *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021) (quoting *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012)) (internal quotation marks omitted). That is, it must be framed "in light of the specific context of the case, not as a broad general proposition." *Id.* (citation and internal quotation marks omitted). As such, I define the constitutional right in this case as follows: the right under the Fourteenth Amendment's Equal Protection Clause to be free from disparate police protection based on the personal animus of the decision maker.[8]

Next, with respect to determining whether this right was "clearly established" at the time of the incident, I first turn "to factually analogous Supreme Court precedent, as well as binding opinions from [the Third Circuit]." *Peroza-Benitez*, 994 F.3d at 165 (citing *Fields v. City of Phila.*, 862 F.3d 353, 361 (3d Cir. 2017)). Following that, I determine whether there exists a "robust consensus of cases of persuasive authority in the Courts of Appeals." *Fields*, 862 F.3d at 361 (quoting *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 247–48 (3d Cir. 2016)). "[I] may also take into account district court cases, from within the Third Circuit or elsewhere." *Peroza-Benitez*, 994 F.3d at 165-66 (citation omitted).

Although the Supreme Court has recognized a "class of one" equal protection claim, *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curiam), the Court has not done so in the context of equal police protection. In *Olech*, the Supreme Court held that a property owner had stated a class of one claim when she alleged that a village conditioned her access to municipal

---

[8]     This personal animus is different than the right to be free from disparate police protection based on a suspect class, which is a well-settled right. *See infra*.

water supply on possession of a 33-foot easement from other properties, despite a requirement of only a 15-foot easement from similarly situated property owners. *Id*. at 565. Given the significant difference in facts currently before this Court, *Olech* is inapplicable here.

In Plaintiff's Complaint, he cites *Smith*, a Sixth Circuit decision from 1973, in support of his position that it is well-established that the deliberate denial of a citizen's right to available police and fire protection violates a citizen's constitutional rights under section 1983, without requiring evidence of racial motive. (*See* Compl., ¶ 110) (citing *Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973)). However, this case is not helpful to Plaintiff's position. In *Smith*, African American members of an interracial music band alleged that a local deputy sheriff and mayor violated their civil rights when the deputy informed the band members' landlord that the landlord would have to evict them because Black residents were not welcome by the townspeople and threatened to withdraw police protection. *Id*. at 34. The appellate court affirmed the district court's dismissal of appellants' section 1983 claim, because the court found that threats of withdrawal of police protection were not causally related to any racial animus on the part of the law enforcement. *Id*. at 37.

It appears that Plaintiff relies on *Smith* because the Sixth Circuit noted that "a law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law." *Id*. at 36-37. The Court acknowledges that this general proposition supports a right to equal police protection under section 1983. However, given its breadth, it is questionable whether this proposition would apply to the present case. Indeed, what is clear is that in *Smith*, the bandmembers' race was clearly at issue under section 1983. In addition, the court went on to explain the circumstances surrounding the

passage of section 1983, which included the principal concern for protecting Black Americans from widespread non-enforcement of the laws.[9]  *Id*. at 37.  Therefore, to the extent that this broad proposition could apply to the present case, for the reasons set forth below, the right in this case is not clearly established.

The Court has identified only a single case from the Seventh Circuit that addresses the right to be free from discriminatory police protection based on malice.  *See Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000).  In *Hilton*, a white man alleged differential treatment by the police from his white neighbors.  *Id*. at 1006.  There, the court reasoned that Hilton would have stated an equal protection claim had he demonstrated evidence of an improper motive behind the police's alleged favorable treatment of Hilton's neighbors.  *Id*. at 1007.  While the Seventh Circuit's decision in *Hilton* recognizes the possibility of an unequal police protection claim without evidence of discrimination on the basis of a protected status, it is insufficient to comprise a "robust consensus of cases of persuasive authority in the Courts of Appeals" necessary to satisfy the clearly established requirement.  *Fields*, 862 F.3d at 361 (citation and quotation marks omitted).

Indeed, Courts of Appeals have recognized the right to equal police protection without discrimination based on race or gender.  *See DeShaney*, 489 U.S. at 197 n. 3 ("The State may not, of course, selectively deny its protective services to certain disfavored minorities without violating the Equal Protection Clause.") (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)); *Mody v. City of Hoboken*, 959 F.2d 461, 466 (3d Cir.1992) ("discriminatory denial of police protection on the basis of race constitutes a violation of section 1983"); *see also, e.g., Hilton*, 209 F.3d at 1007 (noting

---

[9]    Indeed, in its analysis, the appellate court explained that the remedies provided in section 1983 are most appropriately extended to "persons, who because of … the pervasiveness of racist animus in the community, are not protected in their attempt to enjoy peacefully and on an equal basis the civil rights guaranteed them under law."  *Id*. at 37 (citations omitted).

that "selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection."); *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028 (9th Cir. 2000) (recognizing plaintiff's right as a Hispanic woman to have police services administered in a nondiscriminatory manner). Based on prior precedent, despite even the disturbing allegations against former Police Director Coley, the Court finds that Defendants are entitled to qualified immunity, because there is a dearth of cases discussing equal police protection in the specific context of personal animus or malice towards an individual. *See Shipp v. McMahon*, 54 F. App'x 413 (5th Cir. 2002) (finding that defendants were entitled to qualified immunity because a "class of one" equal protection claim for unequal police protection was not clearly established as of 1996).

### b. Section 1983 Fabrication of Evidence Claim

Next, Plaintiff alleges that Defendants fabricated official police evidence in violation of 42 U.S.C. § 1983. Although Plaintiff brings his fabrication of evidence claim under the Fourteenth Amendment's Equal Protection Clause, because no such action exists under the Equal Protection Clause, the Court construes Plaintiff's section 1983 fabrication of evidence claim as arising under the Due Process Clause of the Fourteenth Amendment. Plaintiff argues that Defendants fabricated an incident report with the purpose of misleading the Court or counsel in a pending or anticipated lawsuit as to the truth of a material issue of fact. (Compl., ¶ 135.) Specifically, Plaintiff alleges that the June 1, 2020 Incident Report, describing an interview with Plaintiff regarding the damage to his liquor store sustained on May 31, 2020, was fabricated by Officer Long on his own initiative or under the orders of his superiors to rebut local press commentary on the Trenton Police Department's lack of investigation to identify or arrest any of the 33 individuals who looted Plaintiff's store. (*Id*. at ¶¶ 134-135.)

The Fourteenth Amendment states that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . .

U.S. Const. amend. XIV, § 1.  The Third Circuit has recognized a standalone claim for fabrication-of-evidence under the Procedural Due Process Clause of the Fourteenth Amendment.  *See Black v. Montgomery Cty.*, 835 F.3d 358, 369 (3d Cir. 2016); *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).  Defendants aver that Plaintiff cannot establish a fabrication-of-evidence claim, because he does not assert a deprivation of a protected life, liberty, or property interest.  (*See* Mot. to Dismiss, p. 30.)  I agree.

Although the Third Circuit has not spoken directly to the nature of injury required to state a fabrication-of-evidence claim, its recent decisions in *Halsey* and *Black* involved plaintiffs who were unmistakably deprived of their liberty.  For instance, the plaintiff in *Halsey* alleged that he served 22 years in prison as a result of fabricated evidence that led to his indictment and wrongful conviction.  750 F.3d at 291.  Although the plaintiff in *Black* was not incarcerated, she also endured various restraints on her liberty, including travel from California to Pennsylvania for pre-trial hearings, posting unsecured bail of $50,000, and living under "the cloud of very serious charges." *Black*, 835 F.3d. at 367-68.

Here, unlike the plaintiffs in *Halsey* and *Black*, Plaintiff alleges no deprivation of a liberty interest as a result of the allegedly fabricated evidence.  Rather, Plaintiff avers that the alleged fabricated incident report was used to cover up the Trenton Police's alleged failure to timely respond to Plaintiff's complaints following the May 31st break-in.  (Compl. ¶¶ 134-135.) Importantly, Plaintiff does not allege any detriment to his liberty or property that would have been averted had Defendants refrained from filing the alleged fabricated Incident Report.  Indeed, at the

time of the execution of the Incident Report, Plaintiff had already allegedly sustained losses in merchandise at his liquor store.

Even though the Third Circuit has yet to decide whether a plaintiff alleging a fabrication-of-evidence claim must allege that he was deprived of his life, liberty, or property in some way, several Courts of appeals have done so, and have held that such a showing is necessary. *See, e.g.,* *Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016) (noting that to prevail on a fabrication-of-evidence claim, "the plaintiff must have suffered a deprivation of liberty."); *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) ("To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."); *cf. Zahrey v. Coffey*, 221 F.3d 342, 348 n.4 (2d Cir. 2000) (indicating that "[l]itigants sometimes speak of a 'right to due process,' . . . . [b]ut the Constitution does not guarantee 'due process' in the abstract; it guarantees that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'") (fourth and fifth alterations in original) (quoting U.S. Const. amend. V). Moreover, two courts in the Western District of Pennsylvania have also recognized that a plaintiff must allege deprivation of a liberty interest to state a procedural due process claim for fabrication-of-evidence. *See Deforte v. Borough of Worthington*, 364 F. Supp. 3d 458, 481 (W.D. Pa. 2019), *aff'd*, 844 F. App'x 511 (3d Cir. 2021); *Pazicni v. Miller*, No. 17-cv-117, 2017 WL 2418688, at *7 (W.D. Pa. June 5, 2017). I am persuaded by the Courts of Appeals and district courts that have considered the issue, and find that absent allegations of deprivation of life, liberty or property, Plaintiff's fabrication-of-evidence claim cannot proceed, and is therefore dismissed.

   **c.   *Monell* Claim**

Finally, as to defendant the City of Trenton, Plaintiff alleges that it violated section 1983 acting through defendant Coley's decision to withdraw police protection to Plaintiff's business. (Compl., ¶ 107.)  To establish a section 1983 claim against a municipality such as the City of Trenton, a plaintiff must "demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiff's constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort."  *Hansell v. City of Atlantic City*, 152 F. Supp. 2d 589, 609 (D.N.J. 2001) (citation omitted); *see also Schlaybach v. Berks Heim Nursing & Rehabilitation*, 839 F. App'x. 759, 760 (3d Cir. 2021) (affirming dismissal of *Monell* claim where plaintiff did not sufficiently allege that county hospital had a history of providing inadequate care to nursing home residents after they fall or was otherwise indifferent to their post-fall medical needs and failed to allege a pattern of prior incidents evidencing deliberate indifference).  In asserting a custom or policy, the Third Circuit has explained that

> A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law.

*McTiernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (alterations in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  Further, "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker."  *Id*. at 636.

Here, Plaintiff has failed to allege any facts that suggest the City of Trenton or a decisionmaker for the City of Trenton, promulgated a policy or custom of withdrawing police support for Trenton merchants.  In fact, Plaintiff makes clear that he is not arguing that the City of

Trenton failed to give police protection to all merchants who requested it, but that Coley selectively deprived him of police protection that the City initially dispatched.  (*See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, ("Pl. Br.") at p. 4.)  In other words, Plaintiff alleges that Coley targeted him—not anyone else—in violation of Plaintiff's constitutional rights.  Such allegations of a single incident of selective deprivation based on animus are not the type of allegations of persistent violations that may constitute a custom or policy.  *See, e.g., Banks v. Gallagher*, 686 F. Supp. 2d 499, 511 (M.D. Pa. 2009) ("an isolated incident is not sufficient to show the existence of a custom or policy"); *see also Losch v. Borough of Parkesburg*, 736 F.2d 903, 911 (3d Cir. 1984) ("[a] policy cannot ordinarily be inferred from a single instance of illegality").  Moreover, the Court questions whether Coley had the authority to adopt citywide policy since, even according to Plaintiff, Civilian Police Directors are not sworn police officers, and their authority is limited to the administration of all police department personnel employment matters, including enforcement of disciplinary rules and regulations.  (Compl., ¶¶ 50-51.) (citing *Jordan v. Harvey*, 381 N.J. Super. 112, 118 (App. Div. 2005)).  Accordingly, because Plaintiff has not alleged any facts establishing a policy or custom on the part of the City of Trenton, Plaintiff's *Monell* claim cannot be sustained.[10]

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  All claims against Defendants are dismissed.

---

[10]    Defendants separately argue that Plaintiff's claims should be dismissed because they are "really claims arising under the Mobs and Riots Act, N.J.S.A. 2A:48-1 to 48:7, of which the statute of limitations has run."  (Mot. to Dismiss, p. 22.)  The Court need not consider this argument, however, as Plaintiff's claims are dismissed on other independent grounds.

Date: November 30, 2022                          /s/ Freda L. Wolfson
                                                 Hon. Freda L. Wolfson
                                                 U.S. Chief District Judge